## M. V. SMITH ET AL. V. GIP SMITH.
### No. 1834.

1. **Auditor's Report—Exceptions at Trial.**—Exceptions to alleged mistakes of calculation in an auditor's report should be made in the trial court to entitle the error to be considered on appeal.

2. **Practice—Error of Omission—Requested Charges.**—Failure of the jury to allow interest in this case, if error, was one of omission, and is not available on appeal, since no effort was made at the trial to have that issue submitted to the jury.

3. **Special Verdict—Practice on Appeal.**—A judgment resting upon a special verdict must be supported thereby, and the statement of facts will not be looked to to supply any deficiencies in such verdict.

4. **Administrator—Taxes.**—Taxes paid by an administrator upon unproductive lands of the estate constitute a proper charge against the estate.

APPEAL from Bosque.    Tried below before Hon. J. M. HALL.

*Smith & Davis, M. A. Oatis,* and *Helton & Hughes,* for appellants.

*Crane & Ramsey,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—J. J. Smith and wife, Margaret Smith, emigrated from Mississippi to Texas in 1856, and settled in Bosque County on the William H. Smith 1280 acres survey involved in this controversy. They brought with them 100 slaves, some oxen, wagons, mules and money. Under the laws of Mississippi, this property belonged to the husband.

After settling on the survey of land mentioned, J. J. Smith purchased it, paying cash $1000, his separate property, and giving his note for $1000, due in twelve months, the vendor executing to him a a bond for title. This note was never paid, for the reason, assigned by Smith, that he regarded the title as not being good.

He died in August, 1867, possessed of a large estate of both real and personal property, which he devised to his children and their descendants, including the appellants and the appellee. In that year the appellee became the administrator of his estate, and in 1887 this suit was brought against him in that capacity, alleging various derelictions, and especially unreasonable delay in closing the administration of said estate, and praying for partition, etc.

The court submitted special issues to the jury, upon which judgment was entered in favor of appellants against said administrator for a small sum of money and for their respective shares in two small surveys of land, the Earl and the Lewis surveys. The verdict of the jury upon the numerous special issues submitted is sustained by the evidence.

The first error assigned reads: "The jury erred in its finding, in not finding that the defendant, Gip Smith, owed the estate $279.85 instead of $261.92, with interest thereon from January 1, 1869, up to date."

The discrepancy of less than $18 thus complained of involves the investigation of the administration of an estate of some $25,000 or $30,000 and covering a period of about twenty years, including a partition of the bulk thereof made as far back as 1868 or 1869. In order to facilitate this investigation, an auditor was appointed, whose report showed the estate to be indebted to appellee in the sum of $219.60. The income and revenue tax paid by the administrator to the Federal government had been paid in currency, and the report being excepted to on this ground, the jury, by fixing the value of these payments in gold so reduced the amount found by the auditor as to bring appellee in debt to the estate in the sum of $261.92. No other exceptions to the auditor's report were sustained.

It is now complained under this assignment that there was a mistake in his report, to which attention is for the first time called in this court. It is true, the motion for a new trial contains the same assignment, but the alleged mistake relied on by appellants in the argument filed in reply to appellee's brief would make a difference of several hundred instead of merely $18. As no attention was called to this supposed mistake in the recapitulation of the auditor in the court below, and as it is by no means clear to us that appellants have correctly interpreted that report, we decline to sustain the assignment.

In so far as it complains, if indeed it does complain, that the jury should have allowed interest, the error is one of omission, which appellants should have taken steps to prevent by requesting the submission of that issue to the jury, which they failed to do.

The fourth assignment complains of the failure of the court to render judgment for interest on the sum found to be due by the verdict, but no steps were taken in the court below to have the judgment so rendered, and without a finding of a state of facts by the special verdict making appellee as administrator liable for interest, there was no basis in the verdict for such a judgment. It is too well settled in this State to require the citation of authority, that a judgment resting upon a special verdict must be supported thereby, and that the statement of facts will not be looked to to supply any deficiencies in the special verdict.

The second assignment reads: "The jury erred in its third finding, in not finding that the W. H. Smith 1280 acres survey was the separate property of J. J. Smith at the time of his death."

The jury found that all the property belonging to J. J. Smith at the time of his death was community property of himself and Margaret Smith except $1000 paid in the purchase of this tract of land. It appears from the statement of facts, that the administrator refused to pay the $1000 note given for the balance of the purchase money, on the ground that the title to the land was bad, and that the note had never been paid. It also appears, that in 1868 the surviving widow filed a petition in the Probate Court of Bosque County, where the administration was pending, for a partition of the estate, so as to set apart to her half the community property; and that thereafter, in pursuance of an agreement between her and the commissioners appointed to make the partition, subsequently acquiesced in by the heirs of J. J. Smith, she relinquished her interest in the community estate, in consideration of said 1280 acres and two-eighths of said estate; that she thereafter conveyed this 1280 acres to appellee, against whom successive suits were subsequently brought by adverse claimants, to whom he paid several thousand dollars, which payments the jury found were necessary in order to acquire a title to the land. In the partition referred to, the property set apart to the widow, as found by the jury, was valued at $5023, and that divided among the devisees in the will at $22,149. The only property found by this verdict to be on hand and undistributed consisted of the Earl and Lewis surveys mentioned above.

The fifth and sixth assignments may also be noticed in this connection, complaining in substance, that under the finding of the jury judgment should have been rendered in favor of appellants severally for shares in this 1280 acres tract; but as this verdict finds that the Earle and Lewis surveys alone remained in the hands of the administrator unpartitioned, and also that the widow, who took the 1280 acres tract in the partial distribution, had not received more than her share of the estate, we do not see how it can be successively maintained that they were entitled to a judgment upon this verdict to a share in property not found to be subject to distribution. Nor do we, in view of the statements above made, agree with their contention that the jury should have found that the entire 1280 acres survey was the separate property of J. J. Smith at the time of his death, even should that be deemed a material issue.

The remaining assignment (the third) complains of so much of the judgment as offset the sum found to be due the estate with the amount of taxes found by the jury to have been paid on the Earl and Lewis surveys by the administrator. These surveys seem to have been unproductive property, and no reason is perceived why the administrator should not have had credit for the money thus paid.

So far at least as appellants are concerned, the judgment seems to us to be a just one, and it is in all things affirmed.

*Affirmed.*

Delivered May 8, 1895.